# JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| In re | ) Case No.: SACV 14-01529-CJC |
| CHARLES FRANCIS GUGLIUZZA II, | ) |
| | ) |
| Debtor. | ) |
| ──────────────────────────── | ) **ORDER AFFIRMING IN SUBSTANTIAL PART AND REVERSING IN PART THE BANKRUPTCY COURT'S AUGUST 18, 2014 ORDER** |
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff-Appellee, | ) |
| v. | ) |
| CHARLES FRANCIS GUGLIUZZA II, | ) |
| Defendant-Appellant. | ) |
| ──────────────────────────── | ) |

## I. INTRODUCTION

Appellant Charles Francis Gugliuzza II appeals the Bankruptcy Court's August 18, 2014 order granting Appellee Federal Trade Commission's ("FTC") motion for summary

-1-

judgment and holding that the judgment debt Gugliuzza owed the FTC is nondischargeable under 11 U.S.C. § 523(a)(2)(A) (the "Bankruptcy Court Order").  For the following reasons, the Court AFFIRMS IN SUBSTANTIAL PART and REVERSES IN PART the Bankruptcy Court Order and REMANDS the action to the Bankruptcy Court.

## II.  BACKGROUND

### A.  The Underlying Action

In 2009, the FTC brought an action before this Court against Commerce Planet, Inc. ("Commerce Planet") and several of its directors and officers, including Gugliuzza, ("Underlying Action").  (*See* Case No. SACV 09-01324-CJC(RNBx).)  The FTC asserted two counts against Gugliuzza for deceptive and unfair practices in violation of Section 5(a) of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 45(a), in connection with a deceptive Internet marketing scheme the defendants had created called the "OnlineSupplier."  *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012).  OnlineSupplier was a web creation and hosting service that was marketed as a free "Online Auction Starter Kit" purporting to help consumers sell products on eBay. *Id.* at 1054.  Commerce Planet marketed the OnlineSupplier on a "negative option" basis, but did not adequately disclose that if the consumers failed to cancel their subscriptions, they would be enrolled automatically in the program and charged a recurring monthly subscription fee. *Id.*  Consequently, between July 2005 and March 2008, Commerce Planet had allegedly obtained over $45 million from over 500,000 consumers. *Id.* at 1089.

After a 16-day bench trial, this Court found by the preponderance of the evidence that the marketing of the OnlineSupplier was deceptive and unfair under Section 5(a) of

the FTC Act, and held Gugliuzza individually liable after finding that (1) Gugliuzza was involved in making core decisions that affected the operations of Commerce Planet and its subsidiaries, including the marketing of OnlineSupplier, and (2) Gugliuzza knew or at least was recklessly indifferent to the fact that OnlineSupplier was misleading (the "Underlying Judgment"). *Commerce Planet*, 878 F. Supp. 2d at 1078–83. The Court ultimately awarded the FTC restitution for consumer redress in the amount of $18.2 million under Section 13(b) of the FTC Act. *Id.* at 1092.

### B. The Bankruptcy Court Order

In November 2012, Gugliuzza filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Dkt. Nos. 19-1–19-17, Excerpts of Record on Appeal ["ER"] at 2699–2717.) Subsequently, the FTC filed an adversary complaint in Gugliuzza's bankruptcy proceeding, alleging that the debt Gugliuzza owes pursuant to the Underlying Judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it is a debt arising from "false pretenses, a false representation, or actual fraud." (ER at 2164–2304.) On October 28, 2013, the Bankruptcy Court denied without prejudice the FTC's motion for summary judgment and rejected the FTC's argument that the Underlying Judgment had a preclusive effect on the nondischargeability issue under Section 523(a)(2)(A). (ER at 2153–55.)

In May 2014, the FTC again moved for summary judgment on same grounds, (ER at 1085–1120), and this time, on August 18, 2014, the Bankruptcy Court granted the motion, (ER at 28–34). The Bankruptcy Court found that Gugliuzza was collaterally estopped from litigating the issue of nondischargeability by reasoning that this Court's findings and determination of Gugliuzza's liability in the Underlying Action satisfied all the elements of nondischargeability under Section 523(a)(2)(A). (ER at 28–34.) The Bankruptcy Court found that the relevant issues in the nondischargeability analysis were

identical to the issues in the Underlying Judgment because this Court had already established that Gugliuzza (1) made false representations to consumers; (2) knew he was making false representations because he was recklessly indifferent to the fact that OnlineSupplier was misleading; (3) made the false representations with the intention and purpose of deceiving the consumers because he was recklessly indifferent; and (4) misled consumers because they reasonably relied on his deceptive representations.  (ER at 28–34.)  The Bankruptcy Court further held that the issues relevant to Section 523(a)(2)(A) were actually litigated and critical to this Court's Underlying Judgment.  (ER at 31.) Gugliuzza timely appealed the Bankruptcy Court Order, contending that the Bankruptcy Court incorrectly applied the doctrine of collateral estoppel.  (Dkt. No. 19, Appellant's Opening Brief.)

## III.  DISCUSSION

### A.  Standard of Review

A district court has jurisdiction to hear appeals from final judgments of the bankruptcy courts.  28 U.S.C. § 158(a)(1); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs),* 339 F.3d 782, 787 (9th Cir. 2003). On appeal, a district court must review a bankruptcy court's legal conclusions *de novo* and its factual findings for clear error.  *Neilson v. United States (In re Olshan)*, 356 F.3d 1078, 1083 (9th Cir. 2004).  "A bankruptcy court's grant of summary judgment is reviewed *de novo* . . . [to] determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the relevant substantive law."  *Paulman v. Gateway Venture Partners III (In re Filtercorp, Inc.)*, 163 F.3d 570, 578 (9th Cir. 1998) (internal quotation marks and citation omitted); *O'Malley Lumber Co. v. Lockard (In re*

*Lockard*), 884 F.2d 1171, 1174 (9th Cir. 1989) (finding that a bankruptcy court's application of collateral estoppel is reviewed *de novo*).

### B. Collateral Estoppel

Collateral estoppel bars relitigation of issues that have been previously adjudicated between the same parties. *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). The doctrine of collateral estoppel essentially serves to protect litigants from relitigating identical issues and from the costs and vexation of multiple lawsuits, while conserving judicial resources and preventing inconsistent decisions. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark*, 966 F.2d at 1320.

On appeal, Gugliuzza argues that the issues in the Underlying Judgment do not have a preclusive effect in determining nondischargeability under Section 523(a)(2)(A). In the Underlying Judgment, Gugliuzza was found liable under Section 5(a) of the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." *See* 15 U.S.C. § 45(a)(1). An individual may be held liable for corporate violations of the FTC Act if the individual (1) directly participated in the wrongful practice or act or had authority to control it, and (2) had knowledge of the wrongful practice or act, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of the high probability of fraud along with an intentional avoidance of the truth. *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009). Section 13(b) of the FTC Act gives federal courts broad authority to grant appropriate remedies, such as restitution, for violations of the FTC Act. *FTC v. Pantron I Corp*, 33 F.3d 1088, 1102 (9th Cir. 1994).

Under the Bankruptcy Code, a debt will not be discharged if it was obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To make a claim under Section 523(a)(2)(A), a creditor must prove (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) the debtor's knowledge of the falsity or deceptiveness of his statement or conduct; (3) the debtor's intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) the creditor sustained the alleged loss and damages as the proximate result of the representations having been made. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000). Because the Bankruptcy Code generally authorizes broad discharge of debt to provide "honest but unfortunate debtors" a fresh start, debts that are excepted from discharge usually involve intentional wrongdoing or fraud. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1130 (8th Cir. 1985).

## 1. Misrepresentation, Fraudulent Omission or Deceptive Conduct

The findings in the Underlying Judgment preclude Gugliuzza from relitigating issues under the first element of a Section 523(a)(2)(A) claim. For the first element, the creditor must prove "misrepresentation, fraudulent omission or deceptive conduct" by the debtor. *In re Slyman*, 234 F.3d at 1085. In the Underlying Action, this Court found that Gugliuzza engaged in such culpable conduct in violation of Section 5(a) of the FTC Act, which prohibits unfair or deceptive acts or practices in or affecting commerce. *See Commerce Planet*, 878 F. Supp. 2d at 1078–83; *see also Pantron I Corp*, 33 F.3d at 1095 (finding that an act or practice is deceptive if there is a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances, and the representation, omission, or practice is material). Based on persuasive expert testimony and evidence of consumer complaints and excessive chargeback rates, this Court concluded that the marketing of OnlineSupplier was deceptive and that Gugliuzza

participated in the creation of and had the authority to control the website.  The issue of whether Gugliuzza's conduct was deceptive was thus fully litigated and critical to this Court's holding that Gugliuzza's deceptive actions affected commerce and caused injury to consumers in violation of Section 5(a).

## 2.  Knowledge

Gugliuzza is also precluded from relitigating the issue of whether he had knowledge of the falsity or deceptiveness of his conduct in relation to the OnlineSupplier. The knowledge requirements under Section 523(a)(2)(A) and the FTC Act are identical. Under Section 523(a)(2)(A), knowledge of the falsity or deceptiveness of one's conduct may be established by a showing of *reckless indifference*.  *Advanta Nat'l Bank v. Kong (In re Kong),* 239 B.R. 815, 826–27 (B.A.P. 9th Cir. 1999); *Castro v. Chang Sup Han (In re Chang Sup Han)*, No 2:13-cv-1524-ODW, 2013 WL 3404321, at *3 (C.D. Cal. July 8, 2013).  Similarly, to hold an individual liable for restitution under the FTC Act, the FTC must establish that individual had the requisite knowledge by proving that "the individual had actual knowledge of the material misrepresentation, was *recklessly indifferent* to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of truth."  *FTC v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004) (emphasis added).  In holding Gugliuzza individually liable for monetary restitution, this Court undoubtedly found the knowledge requirement satisfied because the evidence showed that Gugliuzza "knew or at least was recklessly indifferent" to the fact that OnlineSupplier's webpages were misleading.  *Commerce Planet*, 878 F. Supp. 2d at 1081–82.  This issue was fully litigated by both parties and was a necessary part of the Underlying Judgment.

//

//

### 3. Intent to Deceive

Collateral estoppel does not preclude Gugliuzza from litigating his intent to deceive consumers.  Because debts that are excepted from bankruptcy discharge usually involve intentional wrongdoing or fraud, determining a debtor's intent to deceive is crucial in the context of nondischargeability.  By contrast, proof that the individual *intended to deceive* consumers or acted in bad faith is unnecessary to establish a violation of Section 5(a).  *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988) ("To be actionable under section 5 . . . misrepresentations or practices need not be made with an intent to deceive.").  In the Underlying Action, this Court did not make a finding of Gugliuzza's intent to deceive, as it was not critical or necessary to establish a Section 5(a) violation.  *See Commerce Planet*, 878 F. Supp. 2d at 1083.  In fact, unlike Section 523(a)(2)(A), Section 5(a) of the FTC Act does not have an intent to deceive requirement because it would be inconsistent with the primary purpose of the FTC Act, which is to protect the consumer public regardless of the wrongdoer's intent to deceive. *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1195, 1202 (10th Cir. 2005); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 574 (7th Cir. 1989).  Ultimately, Gugliuzza did not have a full and fair opportunity to litigate whether he had the intent to deceive.  Collateral estoppel based on the Underlying Judgment, therefore, cannot be applied to prevent Gugliuzza from litigating this issue for the purposes of nondischargeability under Section 523(a)(2)(A).[1]

---

[1]  Gugliuzza further argues that good faith and advice of counsel are defenses to nondischargeability under the Bankruptcy Code and that the Underlying Judgment does not preclude him from raising these defenses in bankruptcy.  Although this Court found that the evidence did not show Gugliuzza relied in good faith on the advice of counsel, this Court did acknowledge that good faith and advice of counsel defenses were inapplicable under Section 5(a).  *See Commerce Planet,* 878 F. Supp. 2d at 1083–85.  Without addressing whether these defenses are available to Gugliuzza in bankruptcy, this Court finds that Gugliuzza is not collaterally estopped from raising these defenses.

Nevertheless, the FTC cites to *In re Abeyta*, 387 B.R. 846 (Bankr. D.N.M. 2008) and argues that this Court's finding of Gugliuzza's reckless indifference to establish knowledge in the Underlying Judgment is also sufficient to establish intent under Section 523(a)(2)(A). *See In re Abeyta*, 387 B.R. at 855 (applying collateral estoppel and holding that a finding of reckless indifference under Section 5 of the FTC Act is sufficient to satisfy the intent requirement under Section 523(a)(2)(A), given the "facts and circumstances established" in the underlying action). While intent under Section 523(a)(2)(A) may generally be inferred from a reckless indifference finding if the totality of the circumstances allow, *see Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280 (9th Cir. 1996), making such an inference to establish intent is not proper when applying the doctrine of collateral estoppel.[2]  Collateral estoppel applies only when the issues presented are identical, not merely similar. *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992).  Reckless indifference and intent to deceive are separate issues and require separate inquiries.  These issues are not identical and cannot be conflated for the purposes of collateral estoppel.

### 4.  Justifiable Reliance

Gugliuzza is collaterally estopped from relitigating the issue of justifiable reliance in Bankruptcy Court.  In holding Gugliuzza liable and awarding the FTC restitution to provide redress to injured consumers under Section 13(b), this Court necessarily concluded that the consumers actually and reasonably relied on Gugliuzza's misleading conduct vis-à-vis the OnlineSupplier. *Commerce Planet*, 878 F. Supp. 2d at 1089–92 (finding that the FTC had additionally met its burden of proving actual reliance).  A showing of reliance is also required under Section 523(a)(2)(A), but the standard is much less demanding than reasonable reliance. *Field v. Mans*, 516 U.S. 59 (1995) (rejecting

---

[2]  Nor can a court make inferences against the nonmoving party on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

the stricter standard of reasonable reliance and holding that (1) Section 523(a)(2)(A) requires only justifiable reliance and (2) reliance is not justifiable if the recipient of the misrepresentation could have appreciated its falsity at the time by the use of his senses); *see also Missouri ex rel. Nixon v. Audley (In re Audley)*, 268 B.R. 279, 284 (Bankr. D. Kan. 2001) (holding that a prior finding that customers were motivated to buy a product in reliance on a debtor's misrepresentations satisfied justifiable reliance).  In the Underlying Action, the FTC established that Gugliuzza's widespread representations were of a kind usually *relied* upon by reasonable and prudent people.  *See Commerce Planet*, 878 F. Supp. 2d at 1062–83, 1088–92 ("The evidence strongly supports the conclusion that most reasonable consumers would have been misled by OnlineSupplier's landing and billing pages.").  In making its finding of reliance, this Court considered testimony from experts and various consumers, as well as evidence of thousands of complaints submitted via telephone, mail, and email by consumers requesting refunds for the automatic subscription fee charges.  *See id.*  Contrary to Gugliuzza's assertion, the issue of reliance was sufficiently established in the Underlying Judgment and he is now collaterally estopped from relitigating the issue for the purposes of Section 523(a)(2)(A).

The Court is not persuaded by the argument suggested by Gugliuzza that collateral estoppel should not apply because the FTC did not need to provide individualized proof of reliance under the FTC Act.  The FTC Act "serves a public purpose by authorizing the [FTC] to seek redress on behalf of injured consumers" and preventing widespread consumer fraud.  *See, e.g.*, *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993).  For this reason, proof of reliance by every individual consumer is not required.  Indeed, requiring proof of subjective reliance by each individual consumer—here, over 500,000 consumers—"would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of the section."  *Id.*  To now require the FTC to provide individualized proof of consumer reliance in Bankruptcy Court would undermine the FTC Act's purpose of preventing widespread consumer fraud.  It also would be entirely

inconsistent with the Bankruptcy Code's core principles.  *See, e.g.*, *In re Slyman*, 234 F.3d at 1085 ("The purposes of this provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors." (internal quotation marks and citations omitted)).  While the Bankruptcy Code aims to give debtors a "fresh start," it does not allow debtors to retain the benefits of property obtained by fraud or false pretenses.[3]  *See, e.g.*, *FTC v. Porcelli (In re Porcelli)*, 325 B.R. 868 (Bankr. M.D. Fla. 2005) (holding that a $12.5 million FTC judgment against the debtor for false and misleading telemarking practices is nondischargeable); *FTC v. Harrell (In re Harrell)*, No. 98-80266-W, 1999 WL 33486091 (Bankr. D.S.C. Apr. 22, 1999) (holding that an FTC judgment for deceptive advertising is nondischargeable); *FTC v. Lederman (In re Hal Z. Lederman)*, No. SV 94-22688 AG, 1995 WL 792072 (Bankr. C.D. Cal. June 26, 1995) (same); *FTC v. Austin (In re Austin)*, 138 B.R. 898 (Bankr. N.D. Ill. 1992) (finding that a FTC judgment obtained against the debtor for violating Section 5 was nondischargeable).

### 5.  Consumer Loss

The issue of consumer loss was also established in the Underlying Judgment.[4] This element is met if the creditor sustained the alleged loss as the proximate result of the debtor's actions.  *In re Slyman*, 234 F.3d at 1085.  In calculating consumer loss in the

---

[3]  To require individualized proof of reliance under Section 523(a)(2)(A) would create a perverse incentive for a wrongdoer to commit massive consumer fraud.  If the loss caused by the wrongdoer involves a limited number of consumers, the loss will be dischargeable because the FTC can readily prove reliance by every consumer.  But if the loss caused by the wrongdoer involves hundreds of thousands of consumers, the loss will be nondischargeable because the FTC, logistically and practically, cannot prove the reliance of every consumer.

[4]  The Bankruptcy Court granted summary judgment on all five elements of nondischargeability, but did not provide an analysis on the fifth element.  Nonetheless, the parties have briefed this issue and Court reviews it *de novo*.

Underlying Action, this Court weighed evidence and its sufficiency before concluding that $18.2 million was a reasonably conservative estimate of consumer loss that proximately resulted from Gugliuzza's conduct.  The determination of the loss to consumers was essential to and fully litigated in the Underlying Judgment because the FTC sought restitution to redress consumer injury and loss under Section 13(b). *Commerce Planet*, 878 F. Supp. 2d at 1089–93.  Gugliuzza is therefore collaterally estopped from relitigating the amount of loss and injury that he caused consumers.

## IV.  CONCLUSION

Accordingly, the Court AFFIRMS IN SUBSTANTIAL PART the Bankruptcy Court Order with regard to the first, second, fourth, and fifth elements under Section 523(a)(2)(A) and REVERSES IN PART the Bankruptcy Court Order on the third element.  The Court REMANDS the action to the Bankruptcy Court for further adjudication consistent with this Order.

DATED:     March 12, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE